UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES MCADAMS and JO ANN MCADAMS,

    Plaintiffs,

    v.

DAEDONG INDUSTRIAL CO. LTD. d/b/a Kioti Tractor Division,

    Defendant.

Case No. 18-cv-2194-JPG-RJD

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by defendant Daedong Industrial Co. Ltd. d/b/a Kioti Tractor Division ("Daedong Industrial") (Doc. 9). Daedong Industrial, a South Korean corporation with its principle place of business in South Korea, argues that it is not subject to the Court's jurisdiction. Plaintiffs James McAdams ("McAdams") and Jo Ann McAdams have responded to the motion (Doc. 21). Following limited jurisdiction discovery, the parties filed supplemental briefs in support of their positions (Docs. 46 & 47).

**I.    Background**

This case arose after McAdams was injured on August 18, 2016, while working on a tractor owned by his employer Krause and Son, Inc., doing business as Prairie Land Power. McAdams, a sales manager, was preparing a Kioti tractor that had a front-end loader fitted with a quick attach plate. The quick attach plate was used to secure various universal skid-steer attachments to the loader. The tractor McAdams was preparing had a grapple attachment attached to the front-end loader's hydraulic arms using the quick attach plate. McAdams noticed the grapple was not working properly, so he attempted to fix it by raising the front-end

loader arms. When the hydraulic arms were fully extended, the grapple detached from the quick attach plate and fell on McAdams. He was severely injured.

In the Circuit Court for the Seventh Judicial Circuit, Jersey County, Illinois, the plaintiffs sued in separate products liability lawsuits a number of parties potentially responsible for McAdams's injuries. In December 2017, they sued Daedong-USA d/b/a Kioti Tractor Division, the seller of the tractor and a subsidiary of Daedong Industrial, and Worksaver Inc., the manufacturer of the grapple attachment. In August 2018, the plaintiffs first learned through discovery that Daedong Industrial, Daedong-USA's parent company, manufactured the tractor and that Shindong Industrial Co. Ltd. ("Shindong") manufactured the front-end loader and the quick attach plate. They then filed two new suits in Jersey County against Shindong and Daedong Industrial, respectively. Shindong removed its case to this Court as Case No. 18-cv-2199-JPG-RJD, and Daedong Industrial removed its case as Case No. 18-cv-2194-JPG-RJD, this case.

Daedong Industrial believes this Court does not have personal jurisdiction to adjudicate the plaintiffs' claims against it and has, accordingly, moved to dismiss this case for lack of personal jurisdiction..

**II.     Analysis**

    A.     <u>Personal Jurisdiction</u>

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the

evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713).

A federal court sitting in diversity, as this Court is, looks to the personal jurisdiction law of the state in which the court sits to determine if it has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Thus, this Court applies Illinois law. Under Illinois law, a court has personal jurisdiction over a defendant if an Illinois statute grants personal jurisdiction and if the exercise of personal jurisdiction is permissible under the Illinois and United States constitutions. *RAR*, 107 F.3d at 1276; *Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239 (7th Cir. 1990).

    1.    Illinois Statutory Law

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and federal constitutions. 735 ILCS 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002); *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

    2.    Illinois Constitutional Law

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the

assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id*. In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997)). The Court sees nothing in this case indicating that in this particular situation the federal and state standards should yield a different result. Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

### 3. Federal Constitutional Law

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff*, 95 U.S. 714, 733 ), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo*

4

*v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific, or case-linked, jurisdiction refers to jurisdiction over a defendant in a suit arising out of or in connection with the defendant's purposeful contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984). General, or all-purpose, jurisdiction, on the other hand, may exist even in suits that do not arise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Goodyear*, 564 U.S. at 924; *Helicopteros Nacionales*, 466 U.S. at 416. No party in this case contends the Court has general jurisdiction over Daedong Industrial; the issue is whether specific jurisdiction exists.

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Goodyear*, 564 U.S. at 924. Second, the lawsuit must arise out of or be related to the defendant's contact with the forum. *Goodyear*, 564 U.S. at 923-24; *Helicopteros Nacionales*, 466 U.S. at 414 n. 8.

Whether a products liability defendant has purposefully availed itself of privileges in a particular state by placing its products into the "stream of commerce"—that is, the path from manufacturers to distributors to customers—is a subject of debate. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court considered whether an Oklahoma

5

court had personal jurisdiction over a New York car distributor and dealership that had sold a car to a New York resident who then took the car to Oklahoma and was involved in an accident there. *Id.* at 288. The Court noted that the car distributor and dealership directed their business activities only in New York and/or New Jersey and Connecticut and had no connection to Oklahoma other than that they distributed or sold the car that happened to be involved in an accident there. *Id.* at 288-89, 295. In finding no personal jurisdiction, a majority of the Supreme Court held that a defendant's "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" subjects it to the personal jurisdiction of that state. *Id.* at 298. On the other hand, as was the situation in the case before it, the Court held the forum state's court does not have personal jurisdiction over a defendant that sells a product to a consumer who then unilaterally moves the product into the forum state without the defendant expecting it to be so moved. *Id.*

In *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), the Supreme Court could not agree whether a California court had personal jurisdiction over a Japanese defendant simply because it placed its product into the stream of commerce knowing and expecting it would end up in the forum state. Four justices agreed that it was enough that a defendant who placed its product into the stream of commerce *knew* the product, "in the regular and anticipated flow of products," would be marketed and regularly sold in the forum state. *Id.* at 117 (Brennan, J., concurring). Having derived benefits from having its product sold in the forum, the manufacturer could predict and should not be surprised that it could be sued there as well. *Id.* Four other justices required more than a defendant's awareness that its product would enter the forum state through the regular course of business to establish "purposeful availment." *Id.* at 112 (O'Connor, J.). They required "something more,"

that is, that the defendant purposefully direct its business activities to the forum state by, for example, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* The ninth justice would look to the volume of sales of the defendant's product made in the forum to determine whether the defendant "purposefully availed" itself of the forum's benefits. *Id.* at 122 (Stevens, J., concurring). Despite their various views of the stream of commerce theory, all of the justices agreed in the judgment that personal jurisdiction did not exist. *Id.* at 108.

More recently, the Supreme Court decided *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). In that case, a British manufacturer of scrap metal machines had agreed with an independent distributor to sell its machines in the United States, but it did nothing to target the New Jersey market. *Id.* at 878, 886 (Kennedy, J., plurality). The distributor ended up selling no more than four machines, and possibly only one, in the state of New Jersey. *Id.* Four justices rejected the approach requiring only the awareness and expectation that a product would be sold in a particular state, and instead approved of the approach requiring purposeful targeting of business activities to the forum in addition to foreseeability of sales in the forum. *Id.* at 885-86. Two more justices found the plaintiff had not satisfied the tests articulated in *Asahi* or *World-Wide Volkswagen* where there was only a single sale of the offending product in the forum by an independent distributor. *Id.* at 889 (Breyer, J., concurring). In his concurrence, the narrowest articulation of the basis for the judgment, Justice Breyer rejected the extremes: (1) the absolute rule of Justice Kennedy's plurality requiring business activities targeting the specific forum and (2) the notion that mere awareness that a single product *might* be sold through

7

a national distribution network in a distant forum—however unlikely, irregular or inconvenient—as sufficient to support personal jurisdiction under a stream of commerce theory. *Id.* at 890-91. Instead, he suggested the due process analysis should continue to focus on fairness in light of the relationship between the defendant and the forum as well as business realities such as the characteristics of the manufacturer and other "contemporary commercial circumstances." *Id.* at 892-93. The final three justices thought it imminently fair to exercise personal jurisdiction over a foreign manufacturing defendant in a state where its product caused an injury and where the defendant indiscriminately aimed to distribute its products across the entire country. *Id.* at 905 (Ginsberg, J., dissenting).

The Seventh Circuit Court of Appeals has acknowledged the open question regarding the appropriate stringency of the stream of commerce theory, that is, whether it requires only awareness and expectation that a manufacturer's product will be marketed and regularly sold in a certain market, whether the manufacturer must also have purposefully directed business activities to that market, or some middle ground. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004). The Court of Appeals noted before *J. McIntyre* that a majority of the Supreme Court had never overruled the less stringent expectation test articulated in *World-Wide Volkswagen*. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992). A majority of justices in *J. McIntyre*, in turn, agreed that the broadest view of the stream of commerce theory—awareness that a single product might be sold in a specific forum—does not apply, but they did not agree that the targeting rule does either. Instead, the focus should be on overall fairness considering the characteristics of the manufacturer and other "contemporary commercial circumstances." *J. McIntyre*, 564 U.S. at 892-93.

Even where there are sufficient minimum contacts, a defendant may still show that the

8

exercise of jurisdiction would be unfair or unreasonable in light of such factors as "the burden on the defendant. . .[;] the forum State's interest in adjudicating the dispute . . . ; the plaintiff's interest in obtaining convenient and effective relief . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292; *accord Asahi Metal*, 480 U.S. at 113; *Burger King*, 471 U.S. at 477.

B. <u>Application to Daedong Industrial</u>

Daedong Industrial argues that the plaintiffs have failed to make a *prima facie* showing that the Court has specific jurisdiction over it. It maintains that it did not conducted any activity in Illinois tied to the Kioti tractor at issue in this case nor did it purposefully direct any business activity toward Illinois as required by *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987).[1]

In support of its argument, Daedong Industrial has submitted evidence showing is a South Korean corporation with its corporate headquarters and principal place of business in South Korea. Daedong Industrial does not have any offices or corporate assets in Illinois; does not own or lease any real or personal property in Illinois; does not have an address, telephone number or bank account in Illinois; does not have any officers, directors, employees or registered agents in Illinois; and does not maintain any records in Illinois. It has never been incorporated

---

[1] Daedong Industrial misses a fundamental characteristic of *Asahi*—it had no majority opinion adopting either the narrow or the expansive view of the stream of commerce theory of specific personal jurisdiction. *Asahi* does not clearly require anything other than that a defendant must, at a minimum, know or expect its product will be sold in the forum; the additional requirement of targeting that forum with business activities has never been adopted by a majority of the Supreme Court. Even in *J. McIntyre*, which Daedong Industrial does not even mention in its brief, there was no majority to support that narrower view of the stream of commerce theory. So Daedong Industrial's implication that *Asahi* requires business activities targeting the state of Illinois is simply wrong.

9

or based anywhere in the United States and has never had any business location outside South Korea. Daedong Industrial has never transacted business in Illinois, does not design or manufacture any products in Illinois, has never delivered Kioti tractors in Illinois, and has never sold any products in Illinois. Daedong Industrial did not enter into any agreements in Illinois with its United States subsidiary and its distributors. All products manufactured by Daedong Industrial are distributed in the United States by its subsidiary Daedong-USA, which determines to whom and where those products are sold in the United States. Daedong Industrial has no role in Daedong-USA's Kioti tractor marketing, advertising, distribution, or shipping decisions, and it does not track state-specific sales of Kioti tractors. It did not know the specifics of Daedong-USA's distribution networks. Daedong-USA is further responsible for distribution, warranty, administration, parts, sales/ marketing, and service support for Kioti branded products in North America. Daedong Industrial does not service Kioti tractors after sale.

The plaintiffs argue that under the narrow or the broad stream of commerce theory of specific personal jurisdiction, they have presented sufficient evidence to establish a *prima facie* case for jurisdiction based on the connections between Daedong Industrial and Illinois. They point to information from Daedong Industrial's website indicating its wholly owned subsidiary Daedong-USA distributes Kioti tractors through a dealer network of more than 300 dealers, six to eight of which are located in Illinois (the number appears to have changed through the course of this litigation). When McAdams was working for Prairie Land Power in Jerseyville, Illinois, Prairie Land Power was an authorized Kioti dealer. As such, Prairie Land Power sold and serviced Kioti brand tractors manufactured by Daedong Industrial. As a salesman for Prairie Land Power, McAdams sold multiple Kioti tractors in Illinois. He ordered them from a sales representative of Daedong-USA in North Carolina with the knowledge that the tractors were

manufactured and shipped by Daedong Industrial in South Korea. On a number of occasions, the sales representative told McAdams that various products were delayed because they had not yet shipped from South Korea. At one point he also encountered a problem with a tractor, which he reported through an online portal. Two people came to Prairie Land Power to work on the tractor, one of whom was an engineer for Daedong Industrial who had flown in from Daedong Industrial in South Korea.

Authorized Kioti dealers are authorized to perform service work on Kioti tractors, and mechanics of authorized dealers are trained through a program called Kioti University. The brochures and sales flyers for the Kioti tractors indicates they were manufactured by Daedong Industrial and bear Daedong Industrial's name. Daedong Industrial's website also indicates it sold 9,300 tractors in North America in 2017 and 10,000 in 2018 as of November, although it does not specify how many of those tractors were sold in Illinois. The plaintiffs speculate that since Illinois is a largely agricultural state—the number one industry in Illinois is agriculture and 75% of Illinois land is used for farming—it is likely Daedong Industrial knew its tractors were being sold in the state. In fact, the top performing Kioti dealership of the more than 300 authorized dealers in North America for 2015, 2016, and 2017 is in Harrisburg, Illinois, a fact of which Daedong Industrial is aware. Since before McAdams's injury, Daedong Industrial shipped Kioti brand spare tractor parts to a parts distribution center in Chicago, Illinois.

Although Daedong-USA determines to whom and where Kioti tractors are sold in the United States, Daedong Industrial reviews Daedong-USA's proposed sales goals and is involved in setting its overall sales goals. It exercises some control, however, through executives who work for both companies at the same time. For example, J.S. Kim is the chairman of both companies, and four managers hold positions with both companies. Daedong Industrial also

monitors warranty work performed on Kioti tractors by authorized dealers and reimburses the dealers for performing that work.

Resolving all factual disputes and drawing all reasonable inferences in favor of the plaintiffs, the Court finds that the plaintiffs have made a *prima facie* showing that the Court has personal jurisdiction over Daedong Industrial regardless of which stream-of-commerce theory is applied.[2]

Under any theory, Daedong Industrial has sufficient minimum contacts with Illinois for specific jurisdiction purposes. Based on the evidence in the record, it is reasonable to concluded that Daedong Industrial, as the owner of 100% of Daedong-USA with overlapping executives and managers, is aware of Daedong-USA's business practices, specifically, that it makes efforts to enlist and support authorized Kioti dealerships throughout the United States, including Illinois, a heavily agricultural state, for the purpose of increasing sales of the products Daedong Industrial manufactures. Indeed, Daedong Industrial is aware that the top Kioti dealer for the year before, the year of, and the year after McAdams's accident *in the entire area of North America* is in Illinois. While Daedong Industrial may not control—or even know of—specific operations of Daedong-USA, it has involvement and oversight of Daedong-USA's sales goals along with knowledge of its business practices. In essence, Daedong-USA functions like Daedong Industrial's sole agent for distribution in the United States, which allows Daedong Industrial to avoid any substantial presence or direct activity in the country while still reaping the rewards of its markets. Daedong-USA's efforts have been successful, with around 10,000 tractors sold in the United States per year for the past two years. While there is no evidence of the number sold

---

[2] The Court has not considered Daedong Industrial's contacts unrelated to the sale of Kioti products at issue in this case. For the purposes of establishing specific jurisdiction, those contacts are not relevant.

in Illinois, it is reasonable to conclude that the number is not negligible, and certainly more than a single sale, as was the case in *McIntyre*.[3]

It is reasonable to conclude based on the evidence that Daedong Industrial is aware that Daedong-USA has multiple—as many as eight—authorized Kioti dealerships in the state of Illinois and that sales of Kioti tractors to and through those Illinois authorized dealerships is part of the regular flow or regular course of sales. This is especially true where the top Kioti dealership is in Illinois. The dealer network included (at the relevant time) Prairie Land Power, where it once sent one of its engineers from South Korea to advise on a problem tractor. While Daedong Industrial makes no specific decisions about how Daedong-USA chooses to reach out to potential customers through authorized dealerships, it is reasonable to conclude that Daedong Industrial, as the parent company of Daedong-USA with overlapping manages, is aware of its business activities in Illinois and other states and expects its Kioti tractors to be regularly sold there.

It is further clear that Daedong Industrial sends spare Kioti parts to Illinois and has been willing on at least one occasion to send its own personnel from South Korea to service and provide advice about Kioti tractors for authorized dealers and/or customers in Illinois. For post-sale warranty work, although Daedong-USA may be responsible for conducting the necessary repairs, Daedong Industrial ultimately bears the financial burden for those repairs, including those repairs made by Illinois authorized dealers.

Under the theory articulated in *World-Wide Volkswagen*, which requires only that a

---

[3] The tractor in issue in this case was not even *sold* to a consumer in Illinois; it was simply provided to an authorized dealership in Illinois so that it could *try* to sell it to a consumer. Thus, while nearly 10,000 Kioti tractors were *sold* in the United States each year, it is likely that even more were *provided to authorized dealers to try to sell them*.

product manufacturer deliver its product into the stream of commerce with the awareness and expectation they would be purchased by consumers in the forum state, *World-Wide Volkswagen*, 444 U.S. at 298, Daedong Industrial has clearly provided its products to Daedong-USA with the awareness and expectation Daedong-USA would sell them to Illinois consumers through its authorized dealers, including its multiple authorized dealers in Illinois, which include the top dealer in North America. Similarly, under Justice Brennan's test articulated in *Asahi*, which requires only that the manufacturer place its product into the stream of commerce *knowing* it would be marketed and regularly sold in the forum state, *Asahi*, 480 U.S. at 117, Daedong Industrial knew Daedong-USA would market and regularly sell Kioti tractors in Illinois simply by virtue of the fact that it has multiple authorized dealerships there, one of which was the top in North America.

Consideration of the additional teaching of the concurrence in *J. McIntyre* does not change this conclusion. The presence of the tractor at issue in this case in Illinois was not an isolated or fortuitous event. On the contrary, it was clearly part of the regular and intended flow of business for Daedong Industrial, a manufacturer supplying global markets with substantial product sales in the United States, to provide Kioti tractors to Daedong-USA so that they would be further distributed through the regular flow or regular course of business to the multiple authorized dealerships in Illinois. It would not be unfair to expect Daedong Industrial, being a global manufacturer and having intended to take advantage of the Illinois tractor market through its wholly owned distributing subsidiary Daedong-USA, to be haled into court in in Illinois.

Even under Justice O'Connor's stricter test articulated in *Asahi* and endorsed by four justices in *J. McIntyre*, Daedong Industrial has sufficient minimum contacts. That test requires that a manufacturer purposefully direct its business activities to the forum state by, for example,

"designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* at 112; *J. McIntyre*, 564 U.S. at 885. It is apparent that Daedong Industrial has, at a minimum, engaged in the last listed activity by enlisting Daedong-USA to market Kioti tractors in the United States, and specifically in Illinois, on its behalf. Additionally, Daedong Industrial has shown a willingness to service its Kioti tractors by sending a Daedong Industrial employee from South Korea to advise and/or fix a problem tractor in Illinois. It further facilitates repair of Kioti tractors still under warranty by reimbursing for such repairs done by authorized dealerships, including those in Illinois. Daedong Industrial has also directed business activities at the state of Illinois by directly shipping spare Kioti tractor parts to a distribution center in Illinois. These additional business activities purposefully targeted at Illinois are sufficient to show Daedong Industrial satisfies the narrow theory of the stream of commerce specific personal jurisdiction test.

The second prong of the specific jurisdiction inquiry is whether the controversy in the case arose out of Daedong Industrial's contacts with the forum. As discussed above, Daedong Industrial's contacts with Illinois center on its awareness of, intention to, and activity toward distributing and maintaining its products in the state through its subsidiary Daedong-USA, which functioned as its exclusive distributor in the United States. McAdams was injured while he was trying to accomplish just that—selling a Kioti tractor at an authorized dealership in Illinois—and the accident involved that very tractor. The case clearly arose from Daedong Industrial's contacts with Illinois and its plan to sell its products there.

Finally, the Court looks to whether the Court's exercising jurisdiction over Daedong

Industrial would be fair or unreasonable. The Court notes that, while it may present some burden to Daedong Industrial to litigate in Illinois, it is a global manufacturing corporation that has demonstrated its willingness and ability to send an engineer to Illinois to inspect and advise on a problem tractor. Litigation in this forum would not present an unbearable burden, especially in light of the fact that Daedong Industrial has retained counsel in Illinois who can use electronic communications to handle most matters without needing the physical presence of any Daedong Industrial officer or employee. The Court further notes this Court's strong interest in deciding cases involving citizens that reside and employers that provide workplaces within the Southern District of Illinois. The plaintiffs will be able to obtain convenient, effective, and efficient relief here. None of the fairness or reasonableness considerations weigh strongly against exercising personal jurisdiction over Daedong Industrial.

### III. Conclusion

In sum, because the plaintiffs have made a *prima facie* showing of personal jurisdiction, the Court **DENIES** Daedong Industrial's motion to dismiss for lack of personal jurisdiction (Doc. 9).

**IT IS SO ORDERED.**
**DATED:** September 3, 2019

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**